THE UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION

| | | |
|---|---|---|
| Jamal Antonio Middleton, | ) | Civil Action No. 2:08-3256-CWH |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | ORDER |
| | ) | |
| Motley Rice, LLC, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

## I. Background to the Case

The plaintiff, Jamal Antonio Middleton (the "plaintiff"), acting pro se, filed this action in forma pauperis under 28 U.S.C. § 1915[1] against his former employer, Motley Rice, LLC (the "defendant") alleging that the defendant discriminated against him and retaliated against him because of his race (African American) in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §§ 2000e–2000e-17 ("Title VII"). This Court has jurisdiction over this dispute pursuant to 28 U.S.C. § 1331 because this action presents a federal question. Venue is proper because the events at issue occurred in this District. 28 U.S.C. § 1391.

On November 20, 2009, both the plaintiff and the defendant filed motions for summary judgment pursuant to Fed. R. Civ. P. 56. After responses and replies were filed, Magistrate

---

[1] To protect against possible abuses of this privilege, the statute allows a district court to dismiss the case upon a finding that the action "fails to state a claim on which relief may be granted," "is frivolous or malicious," or "seeks monetary relief against a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2)(B)(i-iii). A finding of frivolousness can be made where the complaint "lacks an arguable basis either in law or in fact." Denton v. Hernandez, 504 U.S. 25, 31 (1992) (internal quotation marks and citation omitted). In making this determination, the court is not bound to accept without question the truth of the plaintiff's allegations, but rather need only weigh the plaintiff's factual allegations in his favor. Id. at 32.



Judge Bristow Marchant ("Magistrate Judge Marchant") heard oral argument on the motions on April 21, 2010.[2] On May 4, 2010, Magistrate Judge Marchant issued a comprehensive and well-reasoned report analyzing the record, the issues, and the parties' arguments. The magistrate judge found that the plaintiff had failed to exhaust his administrative remedies with respect to his retaliation claim, which rendered it subject to dismissal, and failed to establish a prima facie case of discrimination. Accordingly, the magistrate judge recommended that the Court deny the plaintiff's motion for summary judgment, grant the defendant's motion for summary judgment, and dismiss the case. (Docket Entry # 158).

After the plaintiff received several extensions of time, he filed his objections to the report on July 2, 2010. (Docket Entry # 180). The defendant filed its reply to the plaintiff's objections on July 17, 2010. (Docket Entry # 185). The plaintiff filed a supplement to his objections on July 19, 2010.[3] (Docket Entry # 187). On July 30, 2010, the defendant filed a motion to exclude the plaintiff's supplemental objections (Docket Entry # 189), which the Court denied on August 2, 2010.

This matter is now before the Court for disposition. The Court is only required to review de novo those portions of the report to which specific objections have been made, see 28 U.S.C. § 636(b)(1), and need not conduct de novo review "when a party makes general and conclusory objections that do not direct the court to a specific error in the magistrate judge's proposed

---

[2] All pretrial proceedings in this matter were referred to the magistrate judge pursuant to the provisions of 28 U.S.C. § 636(b)(1)(A) and (B) and Local Civil Rule 73.02(B)(2)(g) DSC.

[3] The Court notes that the defendant's response to the plaintiff's objections was filed one day late, with neither explanation nor permission to do so. Nevertheless, in an abundance of caution and in the interest of justice, the Court has considered the defendant's response in analyzing the issues presented.



findings and recommendations," Orpiano v. Johnson, 687 F.2d 44, 47 (4th Cir. 1982). In the

absence of objections, the Court is not required to explain its reasons for adopting the report. See

Camby v. Davis, 718 F.2d 198, 200 (4th Cir. 1983).

The Court evaluates the evidence without granting any deference to the magistrate

judge's findings and conclusions. Mathews v. Weber, 423 U.S. 261, 270-71 (1976); Estrada v.

Witkowski, 816 F. Supp. 408, 410 (D.S.C. 1993). The final decision is made by the Court based

upon the actual record, not merely the magistrate judge's reported findings. Wimmer v. Cook,

774 F.2d 68, 76 (4th Cir. 1985). The Court may accept, reject, or modify, in whole or in part, the

report and recommendation, or recommit the matter with instructions. 28 U.S.C. § 636(b)(1).

After a full review of the record, the case law, the magistrate judge's report, the plaintiff's

objections, and the defendant's reply, the Court finds that the magistrate judge thoroughly and

accurately set forth the pertinent facts and the applicable law. For the reasons set forth below,

the Court denies the plaintiff's motion for summary judgment and grants the defendant's motion

for summary judgment.

## II. Standard of Review

Summary judgment is appropriate when the materials of record "show that there is no

genuine issue as to any material fact and that the moving party is entitled to judgment as a matter

of law." Fed.R.Civ.P. 56(c)(2). The movant has the burden of establishing that there are no

genuine issues of material fact, which may be accomplished by demonstrating that the

nonmoving party lacks evidence to support an essential element of its case. Celotex Corp. v.

Catrett, 477 U.S. 317, 322-23 (1986). "[S]ummary judgment will not lie if the dispute about a

material fact is 'genuine,' that is, if the evidence is such that a reasonable jury could return a



verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

Courts take special care when considering summary judgment in employment discrimination cases because states of mind and motives are often crucial issues. Ballinger v. N.C. Agric. Extension Serv., 815 F.2d 1001, 1005 (4th Cir. 1987). This does not mean that summary judgment is never appropriate in these cases. To the contrary, "'the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact.'" Id. (quoting Anderson, 477 U.S. at 247-48). "Together, the genuineness and materiality requirements express the sound proposition that litigation for its own sake is not a judicious use of resources." Hux v. City of Newport News, VA, 451 F.3d 311, 315 (4th Cir. 2006). In the absence of the necessary minimal showing by a plaintiff that a defendant may be liable under the claims alleged, the defendant should not be required to undergo the considerable expense of preparing for and participating in a trial. See Celotex, 477 U.S. at 323-24; Anderson, 477 U.S. at 256-57. Indeed, the Fourth Circuit has stated that, with regard to motions for summary judgment, the district courts have "an affirmative obligation . . . to prevent 'factually unsupported claims and defenses' from proceeding to trial." Felty v. Graves-Humphreys Co., 818 F.2d 1126, 1128 (4th Cir. 1987) (quoting Celotex, 477 U.S. at 323-24).

When faced with cross-motions for summary judgment, as in this case, the court must consider "each motion separately on its own merits to determine whether either of the parties deserves judgment as a matter of law." Rossignol v. Voorhaar, 316 F.3d 516, 523 (4th Cir. 2003) (internal quotation marks and citation omitted). "When considering each individual motion, the court must take care to resolve all factual disputes and any competing, rational



inferences in the light most favorable to the party opposing that motion." Id. (internal quotation marks and citation omitted). With these standards in mind, the Court turns to the plaintiff's objections to the magistrate judge's report.

## III. The Plaintiff's Objections

### A. Introduction

To the extent that the plaintiff's objections to the magistrate judge's report consist of repeating arguments made to, and rejected by, the magistrate, the Court will not conduct a de novo review of those objections, as those objections never cite specific conclusions of the report and recommendation that are erroneous. See, e.g., Camby v. Davis; see also Smith v. City of N. Charleston, 401 F. Supp. 2d 530, 533 (D.S.C. 2005) ("Plaintiff's objections to the R&R are complete rehashings of arguments made to, and rejected by, the Magistrate."). Nevertheless, the Court has throughly reviewed the plaintiff's objections, and to the extent that the plaintiff was able to direct the Court to specific alleged errors in the magistrate judge's report, the Court has made a de novo review of the report, and will address these objections below.

### B. The Defendant's alleged "Discovery Evasion"

First, the plaintiff complains generally that the defendant and defense counsel engaged in an ongoing practice of "discovery evasion" before the magistrate judge. (Obj. (Docket Entry # 180) at 1-3). The plaintiff is not objecting to a specific finding of fact or conclusion of law, but is rehashing arguments that have been made to, and addressed by the magistrate judge. (See, e.g., Docket Entry # 59; # 60; # 66; # 85). The plaintiff's objection is without merit.



### C. The Magistrate Judge's Consideration of the First and Second Amended Complaints

Next, the plaintiff objects to the magistrate judge's dismissal of his claims "due to 'technical' reason [sic]." (Obj. at 4-6). Specifically, the plaintiff objects to the magistrate judge "choosing not to acknowledge the Plaintiff's first and second amended complaints[.]" (Obj. at 4). Although the plaintiff's original complaint was verified, neither the first amended complaint nor the second amended complaint was verified. (See Docket Entry # 1; cf. # 14; # 96). In the Fourth Circuit, verified complaints by pro se litigants are to be considered as affidavits. Williams v. Griffin, 952 F.2d 820, 823 (4th Cir. 1991) (holding that a verified complaint "is the equivalent of an opposing affidavit for summary judgment purposes, when the allegations contained therein are based on personal knowledge."); see also Fed. R. Civ. P. 56(e) (requiring affidavits to be made on personal knowledge, setting forth facts that would be admissible in evidence, and demonstrating the affiant's competency to testify to the matters in the affidavit). The plaintiff's original complaint was verified. Therefore, the magistrate judge properly considered the factual allegations set forth in that complaint as evidence for purposes of both summary judgment motions. In contrast, because the plaintiff's first and second amended complaints were not verified, the magistrate judge did not consider the factual allegations in those documents as evidence either for or against summary judgment. (Report at 2, n.2). The magistrate judge's treatment of the complaint, and the first and second amended complaints, was correct. The plaintiff's objection is without merit.

The plaintiff also objects to the magistrate judge's reliance on Williams on the grounds that Williams "is used almost exclusively in issues where a party's credibility is at issue (i.e.



prisoners)[,]" whereas the plaintiff is a private citizen. (Obj. at 5). The <u>Williams</u> case addresses the treatment of verified complaints by <u>pro se</u> litigants in general, and has been cited in civil actions with frequency. <u>See, e.g.</u>, <u>Smith v. Coffy</u>, No. 08-0201, 2010 WL 1294112 (D.S.C. Feb. 26, 2010); <u>Hurlbert v. Lloyd</u>, No. 09-241, 2009 WL 4363210 (D.S.C. Dec. 1, 2009); <u>Harrison v. Darby</u>, No. 08-3874, 2009 WL 936469 (D.S.C. Apr. 7, 2009). The magistrate judge did not err by citing to <u>Williams</u> in this case. The plaintiff's objection lacks merit.

### D. "Eleventh-hour" affidavits

The plaintiff objects to "all rulings in which the [magistrate judge] leans to 'eleventh hour' affidavits filed by the defendant" in November 2009 and March 2010. (Obj at 4; 6-8). As a threshold matter, the plaintiff briefly objected to these affidavits in a filing directed to the magistrate judge. (Docket Entry # 170). To the extent that the plaintiff is making new arguments to this Court about these affidavits, it appears that the plaintiff objects to the defendant's submission of the affidavit by Ann Ritter, who was the defendant's Managing Partner at the time of the plaintiff's termination. The Ritter affidavit was filed in support of the defendant's motion for summary judgment.[4] The defendant's motion was filed on November 20, 2009, and the memorandum in support thereof likewise is dated November 20, 2009. The affidavit was attached as Exhibit 1 to the defendant's memorandum. The Court finds the Ritter affidavit was not an "eleventh hour" submission, but properly submitted with the memorandum pursuant to Rule 56(e)(1).

---

[4] The defendant's motion for summary judgment was filed on the docket as Entry # 104. The memorandum in support thereof and the affidavit by Ann Ritter were submitted to the magistrate judge for <u>in camera</u> review because of its reference to, and use of, materials protected by the confidentiality order entered in the case. The Court has conducted an independent review of all materials submitted to the magistrate judge for <u>in camera</u> review.



The plaintiff also objects to the magistrate judge's "acceptance" of the "eleventh hour" submission of the affidavit of Anne Kearse.[5] (Obj. at 12). This affidavit was submitted on March 5, 2010, in support of the defendant's reply to the plaintiff's response to the defendant's motion for summary judgment. (Docket Entry # 149 (the defendant's reply) and Docket Entry # 150 (Kearse affidavit)). The plaintiff specifically objects to this affidavit on the grounds that "the Kearse affidavit was never produced to the Plaintiff prior to it's [sic] filing date, which was three months after the Plaintiff's original filing of his response." (Obj. at 12). The Court finds the plaintiff's objection to be frivolous. The Court's docket reflects that after the defendant filed its motion for summary judgment, a Roseboro order was issued to the plaintiff, who responded to the motion by filing a pleading on December 22, 2009. (Docket Entry # 113, # 114, # 115, and # 116). On December 29, 2009, the defendant filed a motion seeking the deletion of these docket entries from the Court's ECF and the imposition of sanctions against the plaintiff because the plaintiff's filing contained confidential documents, in violation of the Court's April 8, 2009 Confidentiality Order. (Docket Entry # 117). Also on December 29, 2009, the magistrate judge ordered that the documents filed as Docket Entry ## 113–116 be returned to the plaintiff and the documents deleted from the Court's ECF. After several other motions and responses had been filed by the plaintiff and the defendant, the magistrate judge held a hearing to address the redaction and/or sealing of the plaintiff's response and exhibits thereto, and allowed the plaintiff until February 23, 2010 to file a response to the defendant's motion. The plaintiff's response,

---

[5] According to the plaintiff, he worked with the Canadian Asbestos litigation group, supervised by attorneys Anne Kearse and James Ledlie, during 2004 and into 2005. The project ended in late 2005. (Pl.'s Ex. 13).



which included documents that were filed under seal,[6] was filed on February 23, 2010. (Docket

Entry # 144). The Kearse affidavit was filed on March 5, 2010, in reply to the plaintiff's

response. (Docket Entry # 150). The plaintiff's claim that the Kearse affidavit was filed "three

months after the Plaintiff's original filing of his response" is frivolous, in light of the history of

the case.

Second, there is nothing improper about the filing of the Kearse affidavit in support of the

defendant's reply. Although the plaintiff objects to the Kearse affidavit because "[t]he Kearse

Affidavit is constructed purely to discredit the Plaintiff[,]" (Obj. at 12), it appears to the Court

that the Kearse affidavit was filed to show that there was no genuine issue as to any material fact

and that the defendant was entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c)(2).

---

[6] The plaintiff appears to object to the filing of certain documents under seal. See, e.g., Obj. at 9, referring to "the documents which the Plaintiff was forced to file under seal along with his response;" Obj. at 10, referring to "Plaintiffs exhibit 30, which the Plaintiff was ORDERED to file under seal;" Obj. at 22, stating: "Whereas Exhibits 52, 53, 54 and 57 are direct evidence of Ritter's bias, and page 31 of the Plaintiffs [sic] response provides the Court with depth, but were ORDERED filed under seal;" Obj. at 22-23: "The large majority of the documents and testimony required for the Plaintiff to provide the Court with enough evidence to prove his claims were ORDERED under seal by [the magistrate judge], again taking strength away from the Plaintiff's ability to show cause for his action;" Obj. at 22: "[T]he Plaintiff requests a de novo review of the evidence and testimony from the Documents filed under seal in this case, and specifically pages 27 thru 31 of the Plaintiff's response;" Obj. at 30: "[T]he Plaintiff is cautious to discuss [this] as this document was ORDERED filed under seal;" Obj. at 40: "Your Honor must also view the assertions and exhibits which apply to them from pages 44 and 45 of the Plaintiffs [sic] response which are filed under seal as Court Entry number 144-4, pages 14 and 15;" and Obj. at 42: "The Plaintiff has given the court numerous exhibits . . . most of which was [sic] ORDERED filed under seal."

The plaintiff's objection appears to be based on his belief that the documents that were filed under seal were not reviewed by the magistrate judge and/or will not be reviewed by this Court. This is not true. The documents at issue were filed under seal, which means that the documents were not filed on ECF, but that hard copies were submitted to the magistrate judge for review in his Chambers. After the magistrate judge's report was filed on ECF, the documents that were designated as sealed were brought to this Judge's Chambers and have undergone a second review.



After this affidavit was filed, it was incumbent upon the plaintiff to provide evidence to dispute the Kearse affidavit with respect to the performance deficiencies attested to by Kearse, or to create a genuine issue of fact as to whether his performance was other than that described in the affidavit. As the magistrate judge found, the plaintiff offered no evidence to refute the performance deficiencies described in the Kearse affidavit. (Report at 31). The plaintiff's objection is wholly without merit.

### E. The Exclusion of "Unverified" Documents

Next, the plaintiff objects to the magistrate judge's classification of certain documents as "unverified." (Obj. at 11). The plaintiff has offered no authority for the proposition that the magistrate judge incorrectly classified these documents. The plaintiff's objection is without merit.

### F. The Plaintiff's Claim of Retaliation

The plaintiff objects to the magistrate judge's determination that his claim for retaliation, added to the action by the plaintiff's second amended complaint, should be dismissed because the plaintiff failed to exhaust his administrative remedies as to that claim. (Obj. at 6; 15-19; cf. Report at 20-24). The Court agrees with the magistrate judge's conclusion. As the record makes abundantly clear, the plaintiff's formal charge to the Equal Employment Opportunity Commission ("EEOC") did not include a charge of retaliation, but set forth a claim only for race discrimination. (Def.'s Ex. 5).

To pursue a Title VII claim, a plaintiff must file a complaint with the EEOC within 180 days of the incident, or within 300 days of the incident if state or local proceedings are initiated. 42 U.S.C. § 2000e-5(e)(1); Nat'l R.R. Passenger Corp. v. Morgan, 536 U.S. 101, 109 (2002).



South Carolina is a deferral state, so the plaintiff could have filed his administrative complaint

with the South Carolina Human Affairs Commission ("SCHAC") instead of with the EEOC.[7]

The magistrate judge noted that the plaintiff filed his administrative charge with the EEOC, not

with SCHAC. (Report at 21).[8]

　　　The plaintiff's EEOC charge stated, in relevant part:  "I believe that I have been

discriminated against because of my race, Black, in violation of Title VII of the Civil Rights Act

of 1964, as amended." (Def.'s Ex. 5).[9]  As the magistrate judge correctly found, the EEOC

charge does not state a claim for retaliation, and the box next to "retaliation" was not checked.

Because "[a] plaintiff's EEOC charge defines the scope of [his] subsequent right to institute a

civil suit," Mayers v. Washington Adventist Hosp., 131 F. Supp. 2d 743, 747 (D. Md.) (citation

---

　　　[7] "A deferral state is one 'which has a State or local law prohibiting the unlawful employment practice alleged and establishing or authorizing a State or local authority to grant or seek relief from such practice.'"  42 U.S.C. § 2000e-5(e); see also S.C.Code Ann. § 1-13-90, et. seq., as amended.

　　　[8] The magistrate judge observed that by using the 180 day period, rather than the 300 day deadline for charges filed with state agency, it appeared that the plaintiff's claims were time barred. (Report at 21, n.7).  However, the defendant consistently argued that the plaintiff had 300 days to file his administrative charge and discussed the plaintiff's claims in terms of that time period.  The magistrate judge noted that neither party had addressed the applicability of the 180 day period. Despite the footnote in the report, the defendant did not address the possible applicability of the 180 day period with this Court.

　　　Although the Fourth Circuit has held that a "failure by the plaintiff to exhaust administrative remedies concerning a Title VII claim deprives the federal courts of subject matter jurisdiction over the claim," Jones v. Calvert Group, Ltd., 551 F.3d 297, 300 (4th Cir. 2009), the Court also is aware of the holding of Zipes v. Trans World Airlines, Inc., 455 U.S. 385 (1982) (the filing of a timely charge is not a jurisdictional prerequisite but is instead subject to waiver, estoppel, and equitable tolling).

　　　[9] This document was submitted on November 20, 2009, as an attachment to the defendant's memorandum in support of motion for summary judgment.  The document was submitted to the magistrate judge for in camera review, and this Court has conducted an independent review of this document.



omitted), aff'd, 22 F. App'x 158 (4th Cir. 2001) (per curiam), it follows that "[t]he allegations

contained in the administrative charge of discrimination generally operate to limit the scope of

any subsequent judicial complaint." Evans v. Techs. Applications & Serv. Co., 80 F.3d 954,

962-63 (4th Cir. 1996). Indeed, the District Court of South Carolina has specifically held that "a

civil suit under Title VII is limited to discrimination charged in the report to the EEOC or to

discrimination actually found by the EEOC upon investigation of the original charge." Stehle v.

Gen. Mills Rest., Inc., 875 F. Supp. 320, 323 (D.S.C. 1994). The magistrate judge correctly

concluded that, although the plaintiff exhausted his administrative remedies on his claim that he

was discriminated against on the basis of his race with respect to the conditions of his

employment and his termination, he did not make a claim for retaliation in his EEOC charge.

The plaintiff submitted an EEOC intake questionnaire (the EEOC intake questionnaire) to

the magistrate judge to support his argument that he had exhausted his administrative remedies

with respect to the retaliation claim. (Pl.'s Ex. 40). The EEOC intake questionnaire is dated

August 31, 2006, approximately seven months before the plaintiff submitted his charge of

discrimination on March 7, 2007. On Page 3 of the questionnaire, the plaintiff had circled

"retaliation" as one of the actions taken against him by the defendant. The magistrate judge

stated that there were two reasons that this exhibit, standing alone, was not sufficient to save the

plaintiff's retaliation claim. First, there was nothing on the exhibit to suggest that it had been

submitted to the EEOC (unlike the plaintiff's charge of discrimination which showed a received

stamp as well as an EEOC charge number), and second, even if that court were to assume that the

document had been received by the EEOC, the narrative contained in the questionnaire did not



set forth any claim of protected activity by the plaintiff or of retaliatory action by the defendant. (Report at 23, citing Pl.'s Ex. 40).

After the plaintiff filed his objections to the magistrate judge's report, he submitted a supplemental memorandum to this Court and attached another copy of the EEOC intake questionnaire at issue, which he had obtained from the EEOC. This document is file-stamped as having been received by the EEOC on September 11, 2006. (Docket Entry # 187-1 at 2-6).[10] This submission, however, does not carry the day for the plaintiff. Although it is true that the plaintiff circled "race" and "retaliation" on the questionnaire (Id. at 4), this questionnaire cannot be used to amend the subsequently filed EEOC charge form. Simply stated, "[t]he EEOC Charge Form and the Intake Questionnaire serve different purposes. An Intake Questionnaire facilitates 'pre-charge filing counseling' and allows the [EEOC] to determine whether it has jurisdiction to pursue a charge." Barzanty v. Verizon PA, Inc., 361 F. App'x 411, 415 (3d Cir. 2010) (citing Fed. Express Corp. v. Holowecki, 552 U.S. 389, 128 S. Ct. 1147, 1159, 170 L. Ed.2d 10 (2008)). "Moreover, the Intake Questionnaire is not shared with the employer during the pendency of the EEOC investigation. On the other hand, an EEOC Charge Form serves to define the scope of the [EEOC]'s investigation and to notify the defendant of the charges against it. A plaintiff cannot be allowed to transfer the allegations mentioned only in the questionnaire to the [EEOC] charge itself. Not only would this be circumventing the role of the Commission, but it would be prejudicial to the employer." Barzanty, 361 F. App'x at 415 (internal citations and footnote omitted). Indeed, "[t]o treat Intake Questionnaires willy-nilly as charges would be to dispense

---

[10] The defendant filed a motion to exclude this information from consideration because the document was filed after the objections to the Report were due. (Docket Entry # 189). The Court denied this motion by a text order filed on August 3, 2010. (Docket Entry # 190).



with the requirement of notification of the prospective defendant[.]" Park v. Howard Univ., 71

F.3d 904, 909 (D.C. Cir. 1995) (quoting Early v. Bankers Life and Cas. Co., 959 F.2d 75, 80 (7th

Cir. 1992)).

 The actual administrative charge that the plaintiff filed with the EEOC in March 2007

does not set forth any retaliatory conduct by the defendant, nor does it assert a retaliation claim in

the section provided in which to do so. (See Def.'s Ex. 5). The plaintiff also acknowledged at

his deposition that the only complaint of discrimination he filed with the EEOC was his

administrative charge, which did not contain a charge of retaliation (Pl.'s Dep. at 130-132; Def.'s

Ex. 5), and none of the other documents from the EEOC indicate that any formal retaliation

claim was investigated by that agency. (Pl.'s Exs. 41-42). Finally, as the magistrate judge noted,

the plaintiff conceded at the hearing on the motions for summary judgment that he had never

made any complaint to a supervisor or Human Resource official to the effect that he believed he

was being discriminated against because of his race. (Report at 25, citing Pl.'s Ex. 35 (complaint

regarding salary, but no reference to race), Pl.'s Ex. 50 (complaint regarding salary, but no

reference to race); and Pl.'s Dep. at 58). In his objections, the plaintiff again admits he never

complained to Human Resources. (Obj. at 37). Therefore, even if the plaintiff had exhausted his

administrative remedies with respect to his claim of retaliation, the claim would be subject to

dismissal because there is no evidence that the plaintiff ever engaged in protected activity, which

is a prerequisite to bringing a Title VII retaliation claim. Tomanovich v. City of Indianapolis,

457 F.3d 656, 663 (7th Cir. 2006) ("Merely complaining in general terms of discrimination or

harassment, without indicating a connection to a protected class or providing facts sufficient to

create that inference, is insufficient.") (citing Gleason v. Mesirow Fin., Inc., 118 F.3d 1134, 1147



(7th Cir. 1997); see also Miller v. Am. Fam. Mut. Ins., 203 F.3d 997, 1008 (7th Cir. 2000)

(holding that the plaintiff did not engage in a protected activity where "[h]er complaints . . .

concerned a general displeasure with being paid less than her co-workers given her longer tenure

and the fact that she had trained some of them" and not discrimination based on her pregnancies);

Albero v. City of Salisbury, 422 F. Supp. 2d 549, 560 n.43 (D. Md. 2006) (complaints of

favoritism are not sufficient; "[m]aking general workplace complaints is not protected activity").

In conclusion, there is no evidence in the record to give rise to a genuine issue of material fact as

to whether the plaintiff exhausted his administrative remedies with respect to a Title VII

retaliation claim.  The magistrate judge correctly found that the plaintiff failed to administratively

exhaust his claim for retaliation, and it is procedurally barred from consideration by this Court.

The claim for retaliation is dismissed.

### G. The Plaintiff's Claim of Disparate Treatment

The plaintiff also asserted a Title VII race discrimination claim alleging disparate

treatment based on his assertion that he was subjected to racial discrimination in the terms of his

employment and when he was terminated.  (Obj. at 19-46; Report at 25-42).  The plaintiff did not

offer any direct evidence of race discrimination, and the magistrate judge found that the plaintiff

failed to present sufficient circumstantial evidence to create a genuine issue of fact, under the

analysis set forth in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973), as to whether any

of these alleged actions occurred because of his race.  (Report at 25-26).[11]  Under the McDonnell

---

[11] The magistrate judge noted that the plaintiff's claim could also be considered under the so-called "mixed-motive" analysis, see Desert Palace, Inc. v. Costa, 539 U.S. 90 (2003), but did not undertake such analysis because neither party had argued for consideration of the plaintiff's claim pursuant to the mixed motive theory.  (Report at 26, n.10).  Moreover, the magistrate judge found that because the plaintiff failed to present any evidence (direct or circumstantial) to show that his race



Douglas framework, the plaintiff has the initial burden of demonstrating a prima facie case of

racial discrimination. Bryant v. Bell Atl. Md., Inc., 288 F.3d 124, 133 (4th Cir. 2002). If the

plaintiff satisfies this initial burden, then a presumption of discrimination arises, and the burden

shifts to the employer to produce a legitimate, non-discriminatory reason for its adverse

employment action. If the employer satisfies its burden of production, then the presumption of

discrimination disappears, and the burden of proof shifts back to the plaintiff to show that the

employer acted with a discriminatory intent and that its proffered explanation is a pretext for

discrimination. Holland v. Washington Homes, Inc., 487 F.3d 208, 214 (4th Cir. 2007).

The magistrate judge first articulated the correct standard: In order for the plaintiff to

establish his prima facie case of discrimination, the evidence must be sufficient to show that (1)

he is a member of a protected class; (2) he was performing his job satisfactorily; (3) he was

subjected to an adverse employment action; and (4) other employees who were not members of

his protected class were treated more favorably, or there is some other evidence giving rise to an

inference of unlawful discrimination. (Report at 27). Furthermore, as to the plaintiff's

termination claim, the fourth prong of the prima facie case may require a showing that the

position remained opened or was filled by similarly qualified applicants outside of the plaintiff's

protected class. (Id.).

It is undisputed that the plaintiff is a member of a protected class (African-American),

and that he suffered an adverse employment action when he was terminated. (Report at 28). The

defendant argued, and the magistrate judge agreed, that the plaintiff had failed to prove the

---

played a role in the employer's decision-making process and had a determinative influence on the
outcome, regardless of the method of analysis, the plaintiff's claim failed. (Id.).



remaining elements of his prima facie case, requiring dismissal of his claims.  First, the

magistrate judge engaged in a detailed analysis of the evidence regarding whether the plaintiff

was performing his job to the satisfaction of his employer.  (Report at 28-36).  The plaintiff

objects to the magistrate judge's finding as to this prong of the prima facie case because this "is

not applicable in this case as there was no structure in place for the Plaintiff's position[.]"  (Obj.

at 33).[12]  The Court disagrees, as there is objective evidence in the record, as will be discussed

infra, of the plaintiff's unsatisfactory job performance.

      The magistrate judge noted that Ritter's affidavit attested to her recollection of problems

surrounding the plaintiff's reliability and productivity as far back as 2002.  (Report at 28; Ritter

Aff. at 2).  According to Ritter's affidavit, after the dissolution of the defendant's predecessor

firm, the defendant hired the plaintiff in 2003, but, despite training, the plaintiff failed to "evolve

into a more productive employee".  (Id.).  Nonetheless, Ritter avers that the plaintiff remained

well-liked, received annual pay increases, and continued to assist various litigation groups in the

firm.  (Id.).  The plaintiff was not permanently assigned to any practice group, but was used by

different groups on an "as needed" basis.  (Ritter Aff. at 3).  According to Ritter, during that

time:

> [H]e developed a reputation within the various practice groups as not being a
> particularly hard worker or possessing the requisite skills for his job title and
> thus his services beyond running errands or conversing (with clients, co-counsel,
> etc.) were not in high demand.  I was personally acquainted with [the plaintiff's]
> work for Motley Rice during this time period, and I found it to be wholly
> unsatisfactory.

---

[12] Although the Plaintiff refers to this factor as the "fourth factor," the Court finds that this
designation is a typographical error, because the plaintiff discusses whether there is some other
evidence giving rise to an inference of unlawful discrimination on page 35 of his Objections.

Page 17 of 26



(Ritter Aff. at 3). Ritter further attests that, after the plaintiff was placed on the Canadian

Asbestos team in 2005, he was not as productive as others on the team, leading the team not to

retain his services. To support this assertion, the defendant has also provided an affidavit from

Anne Kearse, the head of the Canadian Asbestos team, attesting to the plaintiff's poor

performance. (Kearse Aff. (Docket Entry # 150); see also Pl.'s Ex. 8). Specifically, Kearse

averred to the plaintiff's work performance with respect to the Canadian product identification,

or PID project:

> I did not feel that Mr. Middleton had a sound grasp of the essential nature of the
> project, and what was required to timely ensure that claims were filed . . . . I
> attempted to work with him, but his performance did not meet my requirements.
> My memorandum of November 16, 2005, expressed some of my frustration with
> his work. It also shows an attempt to provide Mr. Middleton with more direction.
> I have no present recollection of any reply from Mr. Middleton, and not so long
> afterward, we determined to discontinue using him with this project.

(Kearse Aff.; see also Pl.'s Ex. 8).

In December 2005, the plaintiff began to be supervised by Roger Crombie. (Pl.'s Ex. 14;

Report at 28). In early 2006, the plaintiff became a member of the "Shared Services" team. In

February 2006, the plaintiff was assigned to be a back-up service representative in the Client

Services Center ("CSC"), which was not sufficient work for a full-time employee. (Report at 28-

29). The plaintiff was provided a copy of the CSC job description and guidelines; he was

assigned to handle the rollover calls, and primary responsibility for the CSC was delegated to

another employee. (Pl.'s Exs. 20 and 21).

On April 3, 2006, Crombie emailed the plaintiff, suggesting that the plaintiff take the lead

role in expanding the CSC. (Pl.'s Ex. 23). The plaintiff responded by saying he would take on

the added responsibility if he received a pay increase. (Id.; Report at 29). Crombie pointed out

to the plaintiff that he already was receiving a full-time wage, but that the plaintiff did not have

any job assignment beyond fielding "just a few of these rollover CSC calls[.]" (Pl.'s Ex. 23).

The plaintiff responded to Crombie by saying, in part: "[Y]ou're right, I am not being fully

utilized, [but] getting a full wage." (Id.). The magistrate judge found that, although the plaintiff

ultimately agreed to take on the lead role at the CSC, the evidence showed that the plaintiff failed

to properly handle CSC calls; the plaintiff did not answer CSC phone inquiries properly, and he

did not maintain an appropriate log of calls received and where those calls were transferred.

(Report at 29). The evidence in the record also reflected that tension existed between the

plaintiff and his CSC supervisor, Bettina Honeycutt. Although Crombie began to supervise the

plaintiff's CSC work in order to minimize contacts between the plaintiff and Honeycutt, the

problems with the plaintiff's performance at the CSC persisted. (Report at 29; Pl's Dep. 87:15-

19). As the magistrate judge reported, the plaintiff had failed to handle CSC calls on the

afternoon of Thursday, June 22, 2006, and there was no evidence that the plaintiff had received

any authorization from his supervisor to be gone on that afternoon. (Report at 29-30; Pl.'s Dep.

at. 90:18-25; Def. Ex. 2 (memo from Crombie to plaintiff)). Nor did he inform his backup,

Honeycutt, that he would be gone on Thursday afternoon. (Pl.'s Ex. 26 (memo from Honeycutt

to Crombie)). This resulted in at least 7 voice mail messages accumulating at the CSC that

afternoon which Honeycutt had to handle. (Id.; see also Pl.'s Ex. 28 (memo from Crombie to

Elizabeth Branner, the defendant's Director of Human Resources); Def.'s Ex. 2 (memo from

Crombie to plaintiff); Pl.'s Dep. at 92-93). In his deposition, the plaintiff was uncertain whether

he was in the office at all on Thursday. (Pl.'s Dep. 91:21-24). Yet, in his objections to the

magistrate judge's report, the plaintiff claims he handled telephone calls until 2:48 p.m. on



Thursday afternoon. (Obj. at 31-32). The plaintiff also argues in his objections that he was

"basically running the CSC, but not given any official role with the project[,]" (Obj. at 29) and

further that "the Plaintiff was the only person answering calls." (Obj. at 31). These admissions

only appear to underscore the reliance the defendant placed on the plaintiff in this role. The

plaintiff was unable to offer any explanation as to the reason he was not able to handle the calls

left on the CSC voicemail on Thursday. (Report at 35; cf. Pl.'s Dep. at 90:18-25; 91:21-24;

92:4-11).

The next day, Friday, June 23, 2006, the plaintiff was out of the office virtually all day for

a funeral. (Report at 32-33, 35; see also Pl.'s Ex. 58-59; Ritter Aff. Ex. # 1 (July 18, 2006 memo

from Crombie to the plaintiff)).[13] The plaintiff admitted in his deposition that he had been in the

office that morning for between 30 and 45 minutes (Pl.'s Dep. 91:14-15) and that he had sent out

an email about a firm-wide softball game before leaving for the funeral. (Pl.'s Dep. 92:1-3).

According to the plaintiff, the funeral began at about 10:00 a.m. and finished at 3:30 or 4:00 that

afternoon. (Pl.'s Dep. 93:18-20). After the funeral, the plaintiff did not return to the office, but

went home. (Pl.'s Dep. 94:10-12). By noon on Friday, a total of sixteen voice mail messages

_____

[13] The plaintiff's objections at pages 36-39 are a direct quote from the plaintiff's response to
the defendant's motion for summary judgment (Docket Entry # 144 at 27-30) and also are virtually
identical to the arguments made earlier in his objections. (Obj. at 33-34). The Court notes that it
need not conduct a de novo review of objections presented in this form, as these objections never cite
specific conclusions of the report and recommendation that are erroneous. See Smith v. City of North
Charleston, 401 F. Supp. 2d 530, 533 (D.S.C. 2005) (citing Hernandez Payero v. Puerto Rico, 338
F. Supp. 2d 279, 281 (D.P.R. 2004) ("[D]efendant's objection simply restates the arguments that the
Magistrate-Judge already considered. Under this premise, he cannot expect the Court to treat the
filing seriously.")); Camardo v. Gen. Motors Hourly-Rate Employees Pension Plan, 806 F. Supp. 380,
382 (W.D.N.Y. 1992) ("It is improper for an objecting party to attempt to relitigate the entire content
of the hearing before the Magistrate Judge by submitting papers to a district court which are nothing
more than a rehashing of the same arguments and positions taken in the original papers submitted to
the Magistrate Judge.").



had been left on the CSC line; these calls had to be handled by Honeycutt and others. (Report at 30; Def's Ex. 2; Pl.'s Ex. 26 (memo from Honeycutt to Crombie); Pl.'s Ex. 28 (memo from Crombie to Branner)). The plaintiff acknowledged in his deposition that, had he returned to work on Friday, he could have returned some of those calls. (Pl.'s Dep. 93:11-13). Significantly, Crombie had not given the plaintiff permission to be out of the office all day on Friday. (Pl.'s Ex. 28 (memo from Crombie to Branner)). When Crombie attempted to obtain an explanation from the plaintiff as to the reason he had not handled any CSC calls on Thursday and Friday, the plaintiff responded by sending an insubordinate email to both Crombie and Branner. (Pl.'s Ex. 28). The plaintiff does not dispute the authenticity of these emails; indeed, many are his own exhibits. The magistrate judge found that the plaintiff had failed to present any cogent evidence to show that the general problems with the CSC phone system were the cause of the disputes he had with Crombie over his role as lead CSC operator. (Report at 35; Ritter Aff. Ex. # 1). Instead, the plaintiff's problems with respect to the CSC were of his own doing. The magistrate judge found that the plaintiff had not submitted evidence sufficient to create a genuine issue of fact as to whether he was adequately performing his job with respect to the CSC assignment. (Report at 36).

The plaintiff's job performance also was deficient with respect to a deposition review project to which the plaintiff had been assigned. (Report at 30, 33-35). Because the plaintiff's CSC assignment involved no more than an hour or two of actual work each day, Crombie believed that the deposition review work would be a good use of the plaintiff's time. (Def.'s Ex. 2 (Crombie memo to plaintiff)). The plaintiff's performance on this assignment, however, was not as productive as Crombie and Ritter had expected. (Def.'s Ex. 2; Ritter Aff.) The plaintiff



received the depositions on May 3, 2006, and had over four and one-half months, until

September 20, 2006, to prepare summaries. (Report at 34; Def.'s Ex. 4). Ritter attested in her

affidavit that the plaintiff's productivity on the deposition review project was by far the lowest of

any of the paralegals assigned to that project; on average, the six primary paralegals assigned to

the task each summarized one hundred twenty-four (124) depositions, while the plaintiff

summarized only twenty-two depositions (the next lowest-producing paralegal had summarized

seventy-eight (78) depositions). (Def.'s Ex. 4). The magistrate judge found that there was no

dispute that the plaintiff, who had been designated as a primary reviewer of depositions, had

reviewed far fewer depositions than any other employee so designated. (Report at 35; Ritter Aff.

Ex. 4).[14] Indeed, the plaintiff does not dispute the number of depositions he completed, nor does

he challenge the number of depositions that other primary reviewers completed. Instead, he

objects to this portion of the report by arguing, somewhat obliquely, that he had been "given

instructions in late May, contradicting his previous instruction around May 1 to review

depositions, thus rendering ineffective the comparison of the number of depositions reviewed

between each employee as opposed to the Plaintiff." (Obj. at 32-33). The plaintiff appears to be

referring to his claim that Crombie had "pulled him off" the deposition assignment (Obj. at 34),

an issue the plaintiff already has vehemently argued before the magistrate judge, without success.

---

[14] The plaintiff reviewed 22 depositions in approximately 19 weeks. In comparison, the five other primary reviewers performed as follows:

| | |
|---|---|
| 78 depositions | 9 weeks |
| 170 depositions | 13 weeks |
| 79 depositions | 7 weeks |
| 200 depositions | 14 weeks |
| 193 depositions | 13 weeks |

(Ritter Aff., Ex. 4).



(Report at 33-35). As the magistrate judge found, the plaintiff, at most, was "pulled off" the deposition review project for two days in May of 2006, when another employee, who was assisting with the CSC calls, was out sick. (Report at 34 n.13).

The Court agrees with the magistrate judge in his finding that the plaintiff did not submit evidence sufficient to create a genuine issue of fact as to whether he was performing his job assignments–consisting of the CSC position and reviewing depositions–at a level that met the defendant's legitimate expectations in the time period leading up to his termination. Thus, the plaintiff failed to prove one of the necessary prongs of his prima facie case of disparate treatment race discrimination. See, e.g., Cook v. CSK Transp. Corp., 988 F.2d 507, 513 (4th Cir. 1993) ("[U]nsupported allegations do not establish a prima facie case of race discrimination"); Anderson, 477 U.S. at 250 (there must be evidence on which a jury could reasonably find for the plaintiff); Evans, 80 F.3d at 960 ("unsubstantiated allegations" are insufficient to defeat summary judgment). And, even if the plaintiff believed he was performing his job in an adequate fashion, it is the employer's perception of job performance, and not the perception of the employee, that controls. King v. Rumsfeld, 328 F.3d 145, 149, 151 (4th Cir. 2003); De Jarnette v. Corning, Inc., 133 F.3d 293, 299 (4th Cir. 1998) (citations omitted); see also Boden v. U.S. Amada Ltd., 978 F. Supp. 657, 659 (E.D.N.C. 1997) (a former employee's own subjective belief and conclusory statements that he had been discriminated against are not sufficient to raise a reasonable inference of unlawful discrimination).

In his thorough report, the magistrate judge continued his analysis by addressing the fourth prong of the plaintiff's prima facie case and examining whether, even if there were sufficient evidence to create a genuine issue of fact as to whether plaintiff was performing his job



to his employer's satisfaction, the position remained open or was filled by someone with comparable qualifications from outside plaintiff's protected class, which would give rise to an inference of unlawful discrimination in the defendant's actions. (Report at 36-42). The plaintiff objects, contending that the standard the magistrate judge articulated is "contrary to the law." (Obj. at 35). The plaintiff's objection is without merit, because the magistrate judge did, in fact, set forth the correct fourth prong of the McDonnell Douglas standard ("other employees who were not members of his protected class were treated more favorably, or there is some other evidence giving rise to an inference of unlawful discrimination"), adding that "the fourth prong of the prima facie case may require a showing that the position remained opened or was filled by similarly qualified applicants outside of Plaintiff's protected class." (Report at 27). The magistrate judge found that the "Plaintiff has presented no evidence to show, and indeed does not even assert, that following his termination he was replaced by someone from outside his protected class." (Report at 36). The plaintiff, in his objections, quotes his affidavit, wherein he admits that after he was removed from the Canadian Asbestos team, "[a]nother investigator was not put in my place[.]" (Docket Entry # 180 at 12). Despite this statement in his affidavit, however, the plaintiff also argues in his objections that "[a]fter being removed from the Canadian Asbestos project, Heather McCain, a white woman and paralegal who was working with another project, was brought in to work on the cases that the Plaintiff had already worked on for a little over a year." (Obj. at 36). The record evidence indicates that the plaintiff had been removed from the Canadian Asbestos team because Kearse "did not feel that Mr. Middleton had a sound grasp of the essential nature of the project[.]" (Kearse Aff. (Docket # 150)). Furthermore, the



Page 24 of 26

plaintiff was an investigator, and he was replaced by a paralegal.[15]  The defendant argues that the plaintiff was <u>not</u> replaced, pointing to the evidence in the record that one of the reasons the plaintiff was terminated was because there was not sufficient work available to justify his full time position and salary.  (Pl.'s Dep. at 71:5-9 ("So there were times when I would be in the office and I would receive some days five phone calls in an hour; some days, it would be five phone calls in a day, so the call volume varied"); Pl.'s Ex. 23 (email from the plaintiff to Crombie dated April 3, 2006: "[Y]ou're right, I am not being fully utilized, and getting a full wage"); Pl.'s Ex. 63 (email from Crombie to Branner dated July 13, 2006: "Jamal fielded about ten calls on Monday, and the same number Tues.  No more than five to ten minutes of work per call. . . . Yesterday, Jamal handled two calls"); see <u>Gamble v. Aranack Uniform Servs.</u>, 132 F. App'x 263, 267 (11th Cir. 2005) (African American former employee failed to establish a prima facie case of discriminatory demotion or termination under Title VII, where his position was eliminated and employee was not replaced by anyone, let alone a person outside of his protected class.).

Pages 36-39 of the plaintiff's objections merely repeat arguments made to, and rejected by the magistrate judge, and will not be addressed here.  Similarly, at pages 40-41, the plaintiff repeats arguments made to the magistrate judge and addressed in the Report at 36-39.  And, at pages 41-43, the plaintiff argues that he has set forth sufficient evidence of racial animus, another issue that the magistrate judge discussed in detail at pages 39-42 of his Report, before concluding that there was no credible evidence of racial animus.

---

[15] The plaintiff testified that he "mostly" performed investigative work for the defendant. (Pl.'s Dep. 13:1-3).



Viewing the record in the light most favorable to the plaintiff, the Court accepts the magistrate judge's conclusion that the plaintiff failed to submit evidence sufficient to create a genuine issue of material fact as to the second and fourth prongs of the prima facie case of disparate treatment race discrimination, *viz.*, whether he was performing his job satisfactorily, and whether other employees who were not members of his protected class were treated more favorably, or whether there is some other evidence giving rise to an inference of unlawful discrimination. The Court is convinced that no reasonable jury could return a verdict in favor of the plaintiff. See Anderson, 477 U.S. at 248. The magistrate judge's report (Docket Entry # 158) is adopted and accepted, the plaintiff's motion for summary judgment (Docket Entry # 105) is denied, the defendant's motion for summary judgment (Docket Entry # 104) is granted, and this case is dismissed.

**AND IT IS SO ORDERED.**

**C. WESTON HOUCK**
**UNITED STATES DISTRICT JUDGE**

August _6_, 2010
Charleston, South Carolina